UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 11-22623-CIV-O'SULLIVAN

[CONSENT]

TREO BY QUANTUM, LLC,
a Florida limited liability company,

    Plaintiff,

v.

OPPENHEIMER MULTIFAMILY
HOUSING & HEALTHCARE FINANCE,
INC., a Pennsylvania corporation,

    Defendant.
                                   /

## ORDER

THIS MATTER is before the Court on the defendant's Motion for Summary Judgment (DE# 66, 7/3/13). Having carefully reviewed the motion, response, reply, and evidence in the record, and having heard argument from counsel, it is

ORDERED AND ADJUDGED that the defendant's Motion for Summary Judgment (DE# 66, 7/3/13) is DENIED.

## BACKGROUND

The defendant was a lender on a mortgage note and rider (collectively referred to as the "Treo Mortgage") with the plaintiff. The plaintiff borrowed funds to build a multi-unit rental apartment complex. The Treo Mortgage prohibited prepayment of the Treo Mortgage prior to September 30, 2013 (the "Lockout Provision"). The Treo Mortgage was securitized, and the resulting bonds were sold to a single investor (the "Bondholder") in an agreement to which Treo was not a party. The securitization of the Treo Mortgage and the sale of the bonds to the Bondholder did not modify the parties

to, or the terms of, the Treo Mortgage.

In early 2011, Treo was negotiating to sell the apartment project to a purchaser who wanted to acquire it on a debt-free basis (i.e. the purchaser wanted the Treo Mortgage prepaid). Treo needed to repurchase the bonds from the Bondholder and asked the defendant to communicate with the Bondholder regarding a potential repurchase of the bonds. In February and April 2011, the defendant communicated with the Bondholder regarding a potential repurchase. The Bondholder rejected the plaintiff's proposal for an option contract that would have ensured the availability for a fixed period of time to facilitate Treo's intention to simultaneously close on the sale of the property and consummate the bond repurchase. The defendant forwarded the text of the Bondholder's e-mail to the plaintiff's real estate broker with the Bondholder's statement that bond trades were made on an instantaneous basis at a current, market price and warning of the risk that it might not own the bonds if the plaintiff sought to repurchase them in the future.

On April 25, 2011, the plaintiff entered into a purchase and sale agreement with UBS to sell the underlying mortgaged property and to deliver it on a debt-free basis in June 2011. Treo first offered to buy the bonds in June 2011 when it was ready to close the sale of the property. Unknown to the defendant, the bonds had been conveyed to a trust and were no longer available from the Bondholder. The purchase and sale agreement set liquidated damages in the amount of $200,000, which the plaintiff paid UBS for the plaintiff's failure to sell the property debt-free.

The plaintiff filed this action against the defendant for negligent misrepresentation and breach of fiduciary duty seeking out-of-pocket damages and lost

profits. The defendant seeks summary judgment on four grounds: 1) the Banking Statute of Frauds bars the claims; 2) there is no justifiable reliance for a negligent representation claim; 3) a fiduciary relationship does not exist; and 4) lost profits are not recoverable.

The defendant argues that the Banking Statute of Frauds bars the plaintiff's claims because the parties never entered into a written agreement to modify or waive the Lockout Provision and the Banking Statute of Frauds prohibits the plaintiff from relying upon oral representations of the defendant to modify or waive provisions of a loan. Additionally, the defendant seeks summary judgment on the ground that the plaintiff cannot establish justifiable reliance to establish a negligent representation claim because the defendant communicated to the plaintiff the Bondholder's refusal to enter into an option contract and the Bondholder's warning that the bonds may not be available. The defendant also contends that the plaintiff cannot establish the existence of a fiduciary relationship. Finally, the defendant asserts that the plaintiff cannot recover lost profits.

In its response in opposition to the motion for summary judgment, the plaintiff maintains that the tort claims arose from a failed purchase of a security from a third party, the Bondholder. Because the negligent representation and breach of fiduciary duty claims have nothing to do with a loan modification, the plaintiff argues that the Banking Statute of Frauds does not preclude its claims. The plaintiff argues that the defendant is not entitled to summary judgment on the issue of damages, namely lost profits. Pursuant to the purchase and sale agreement between the plaintiff and UBS, the plaintiff paid the liquidated damages in the amount of $200,000 for failing to close.

Additionally, a year later, the plaintiff sold the property subject to the debt at a reduced price.

## DISCUSSION

### I.      STANDARD OF REVIEW

The court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party bears the burden of meeting this exacting standard.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  That is, "[t]he moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323).  In assessing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994); Sheckells v. Agv-Usa Corp., 987 F.2d 1532, 1534 (11th

Cir. 1993); Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir. 1990). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997). If the record presents factual issues, the court must deny the motion and proceed to trial. Adickes, 398 U.S. at 157; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Despite these presumptions in favor of the non-moving party, the court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the court occasioned by an unnecessary trial. Celotex, 477 U.S. at 322-323. Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. Id. As the Supreme Court noted in Celotex,

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id. at 322-323. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant. Anderson, 477 U.S. at 251; Matsuchita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## II.     FLORIDA'S BANKING STATUTE OF FRAUDS

Florida's Banking Statute of Frauds provides in pertinent part that a "debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Fla. Stat. 687.0304(2).  Florida law defines a credit agreement as "an agreement to lend or forbear repayment of money ..., to otherwise extend credit, or to make any other financial accommodation." Fla. Stat. 687.0304(1)(a).

The defendant contends that the plaintiff's claims for breach of fiduciary duty and negligent misrepresentation are barred by Florida's Banking Statute of Frauds because they purportedly involve the modification of a mortgage.  The plaintiff argues that the Banking Statute of Frauds does not apply because the tort claims arise out of the bank's role as the debtor's agent in a separate transaction to purchase the bond that secured the mortgage from the third party Bondholder.  The undersigned agrees.

The defendant cites case law that is factually distinguishable and inapposite. None of the defendant's cases address the circumstance of a lender serving as an agent to assist the debtor with the purchase of a bond that serves as security for the mortgage.  Instead, the cases cited by the defendant involve typical debtor/creditor relationships that involve modifications of existing loans.  See, e.g., Locke v. Wells Fargo Home Mortgage, No. 10-60286-Civ, 2010 WL 4941456, at *6 (S.D. Fla. Nov. 30, 2010) ( "The negligent misrepresentation claim in this case is premised on the same conduct as the breach of contract claim, alleging that Wells Fargo 'negligently misrepresented to Plaintiff ... that Defendants would permanently modify

6

Plaintiff's...existing mortgage loan[ ]."").

One of the cases cited by the defendant, Brake v. Wells Fargo Fin. Sys. Fla., Inc., No.: 8-10-cv-338-T-33TGW, 2011 WL 6719215 (M.D. Fla. Dec. 5, 2011), found that the bank's oral promise to modify a mortgage loan on more favorable terms was a credit agreement subject to Florida's Banking Statute of Frauds, yet the court granted the plaintiff leave to amend to assert a claim for breach of fiduciary duty that arose from that relationship.

In the present case, the evidence in the record may support a claim for breach of fiduciary duty and negligent misrepresentation where, as here, the bank assumed the role of the plaintiff's agent in negotiating the purchase of the bond that served as security for the mortgage. As in Brake, Florida's Banking Statute of Frauds should not preclude the plaintiff from asserting a breach of fiduciary duty claim and a negligent representation claim that arise from something other than a loan modification, i.e. from negotiations to purchase a bond. The defendant's motion for summary judgment on the ground that the claims are barred by Florida's Banking Statute of Frauds is denied.

### III.     GENUINE ISSUES OF MATERIAL FACT EXIST

The defendant seeks summary judgment on the plaintiff's claims for breach of fiduciary duty and negligent misrepresentation. As discussed below, genuine issues of material fact exist that preclude summary judgment.

#### A.     Breach of Fiduciary Duty Claim

Under Florida law, to establish a breach of fiduciary duty claim the plaintiff must show: 1) the existence of a fiduciary duty, 2) breach of that duty, and 3) damages caused by the breach. Gracey v. Eaker, 837 So. 2d 348 (Fla. 2002); see Barnett Bank

of Marion County, N.A. v. Shirey, 655 So. 2d 1155 (Fla. 5th DCA 1995)(bank liable for breach of fiduciary duty by disclosing sensitive information to third party).

The defendant contends that as lender, Oppenheimer Multifamily did not owe Treo a fiduciary duty.  See McCulloch v. PNC Bank Inc., 298 F.3d 1217, 1226 n.13 (11th Cir. 2002)("[T]here is no presumed fiduciary relationship between a lender and a borrower.") (applying Florida law).  Despite the general law, in Barnett Bank of West Florida v. Hooper, 498 So. 2d 923 (Fla. 1986), the Supreme Court of Florida found that a fiduciary relationship arose between a bank and a customer from the parties' established relationship of trust and confidence.  Special circumstances transformed the lender/borrower relationship into a fiduciary one.  Id. at 925; see Shirey, supra.

The defendant maintains that "there are no facts in the record that support the existence of a fiduciary relationship regarding communications about the repurchase of the bonds."  Motion p. 16.  Based on a review of the record, the Court disagrees.  The facts of this case raise jury issues as to whether the parties' relationship became more than the usual creditor/debtor relationship.

In the present case, the record evidence presents fact questions as to the existence of the fiduciary relationship.  A jury should decide whether the plaintiff reposed trust in the defendant to negotiate as the plaintiff's agent on its behalf to repurchase the Bond from an undisclosed Bondholder who would negotiate only through the defendant.  The plaintiff's claims do not arise out its mortgage with the defendant.  Instead, the claims arise from a separate transaction to repurchase the Bond.  See, e.g., Andy Burnham's e-mail (Treo) to Betty Kavanaugh, Ex. 24

(OMHH0000972)[1]("We are dependent on your group to lead us through these issues and obviously put a great deal of trust in your abilities based on the [UBS Purchase and Sale] contract we executed... We are prepared to have John [Hammond also of Oppenheimer] to present/negotiate our offer and purchase the bond immediately...."). The evidence in the record reveals that the plaintiff believed that the defendant was acting as its agent. Also, Karen Cady of Credit Suisse (the undisclosed Bondholder) testified several times that she understood Oppenheimer was negotiating on Treo's behalf. PSAF at ¶ 7.[2] The plaintiff contends that Oppenheimer believed it as well. The defendant's representative, Betty Kavanaugh, assured the plaintiff that it was her belief that the Bondholder would not pull a "bait and switch." Pl.'s Response p. 17 (Ex. 14; TREO 006538).

The defendant has failed to establish as a matter of law that the plaintiff cannot prove its claim for breach of fiduciary duty. The defendant's motion for summary judgment as to the plaintiff's breach of fiduciary duty claim is denied.

B.  Negligent Misrepresentation Claim

To establish a negligent misrepresentation claim under Florida law, a party must show: 1) there was a misrepresentation of material fact; 2) that was either known or should have been known to be false; 3) that was intended to induce another to act on the misrepresentation; and 4) injury resulted to a party acting in justifiable reliance upon

---

[1] Oppenheimer Multifamily Housing and Healthcare Finance, Inc.'s bates-stamped documents are referred to as "OMHH#." Treo by Quantum, LLC's bates-stamped documents are referred to as "TREO#."

[2] The Plaintiff's Statement of Additional Relevant Facts is cited as "PSAF at ¶___."

the misrepresentation. Baggett v. Elecs. Local 915 Credit Union, 620 So. 2d 784, 786 (Fla. 2d DCA 1993) (reversing summary judgment on negligent misrepresentation claim). The plaintiff's negligent misrepresentation claim is based on allegations including that "[i]n February of 2011 representatives of [defendant] made promises and representations to [plaintiff] and its principals that [defendant] had reached an agreement for the purchase of the Bonds at market price. These promises and representations were repeated on April 5th on a conference call that included the purchaser UBS and again in early June as [defendant] to continued to provide alleged market prices for the Bonds." Complaint ¶ 42.

The defendant argues that the record is clear that the Bondholder rejected the proposal of an option contract and that such rejection was communicated to the plaintiff. Def.'s Motion p. 19 (citing Ex. 6 (Carr Trans.) at 72:25 to 73:13; Ex. 8 (OMHH-000819; Ex. 10 (Broker e-mail)). The plaintiff argues that

> nothing in [the Bondholder's April 5th] e-mail transformed the advice that Oppenheimer continued to provide as Treo's agent, either later that afternoon to Treo and its buyer and for over a month thereafter. And nothing in the e-mail indicates the Bond will not be available for sale. In fact, it *was* still available for sale for weeks after this e-mail, and could have been purchased by Treo had Oppenheimer, its agent, actually bothered to check.

Pl.'s Response p. 20. The e-mail did not state that the Bond was in jeopardy of being committed elsewhere. Instead, the defendant represented that the Bond would be available through Final Endorsement, still months away. Pl.'s Response p. 22. The plaintiff contends that Jim Moore of Oppenheimer did not bother to confirm with the Bondholder the availability of the bond for over a month as he generated quotes purporting to be from the Bondholder. PSAF at ¶ 19, ¶ 27. The plaintiff maintains that

Oppenheimer represented to Treo, in fact, that only the Bondholder could provide an actual quote, so Treo had no basis for thinking its Bond was in any jeopardy.  PSAF at ¶ 9.  Although the defendant argues that representations by the defendant after April 25, 2011 are legally irrelevant to the plaintiff's claims, the Court disagrees.  The record does not establish as a matter of law that the plaintiff cannot establish the elements of a negligent misrepresentation claim.  The motion for summary judgment as to the negligent misrepresentation claim is denied.

**IV.   DAMAGES**

The plaintiff claims that it was unable to purchase the Bond and could not close the UBS deal because the Bond had actually been committed to a Real Estate Mortgage Investment Conduit ("REMIC").  PSAF at ¶ 28.  UBS demanded and the plaintiff paid the liquidated damages ($200,000) provided for in their Purchase and Sale Agreement.  PSAF at ¶ 29.  A year later, the plaintiff sold the property subject to the debt for a reduce price.  PSAF at ¶ 30.  The plaintiff seeks to recover damages based "primarily on the value of the contract it had with UBS, less the reduced price it was able to sell the property for subject to the debt." Pl.'s Response at p. 24 (DE# 71, 7/29/13); Ex. 31 (Report of Andrew Roper, Ph.D.).  The plaintiff seeks damages based on it's inability to protect its sale due to the defendant's failure to notify the plaintiff that the bond would not be available for any price after April.

The defendant contends that the plaintiff is not entitled to lost profits as a matter of law.  Def.'s Motion at pp. 17-19.  Negligent misrepresentation sounds in fraud rather than negligence under Florida law.  Souran v. Travelers Ins. Co., 982 F.2d 1497, 1511 (11th Cir. 1993) (citations omitted). The defendant concedes that Florida courts employ

one of two measures of damages in fraud cases to restore the injured party to the position it would have been in had the wrong not occurred: (1) the "out-of-pocket" rule; or (2) the "benefit-of-the-bargain" rule.  Laney v. Am. Equity Inv. Life Ins. Co., 243 F. Supp. 2d 1347, 1354 (M.D. Fla. 2003).  The defendant argues that the out-of-pocket measure is preferred and that the benefit-of-the-bargain rule should be used only when the out-of-pocket rule is not sufficient.  Pl.'s Motion p. 18; see Nordyne Inc. v. Florida Mobile Home Supply, Inc., 625 So. 2d 1283, 1286 (Fla. 1st DCA 1993).

The defendant further argues that the plaintiff must show that its damages were proximately caused by the defendant's conduct.  The defendant cites Jaffe v. Bank of America, N.A., 667 F. Supp. 2d 1299, 1320 (S.D. Fla. 2009), aff'd, 395 F. App'x 583 (11th Cir. 2010)(unpublished), Pitts Sales, Inc. v. King World Productions, Inc., 383 F. Supp. 2d 1354, 1364 (S.D. Fla. 2005) and Hogan v. Provident Life and Accident Insurance Co., 665 F. Supp. 1273, 1286-87 (M.D. Fla. 2009).  While these cases discuss proximate cause as an element of breach of fiduciary duty or negligent misrepresentation claims, none of them involve facts similar to those in the present case, where the bank allegedly created a fiduciary duty by serving as the plaintiff's agent in attempting to negotiate the purchase of the Bond that secured the mortgage. For example, in Jaffe, after a bench trial, the court found that the relationship between the parties was "nothing more than lender-borrower."  Id. at 1320.   Lost profits are not addressed in Jaffe, King World Productions, or Hogan.

The defendant relies on Totale, Inc. v. Smith, 877 So. 2d 813 (Fla. 4th DCA 2004) to limit damages, if any, to "out-of-pocket" damages.  In Totale, the court determined that the plaintiff "could not recover 'benefit of the bargain' damages because the

evidence at trial of a loss in excess of the $100,000 was 'so vague as to cast virtually no light upon the value of the property had it conformed to the representations.'" Id. at 816 (quoting DuPuis v. 79th Street Hotel, Inc., 231 So. 2d 532, 536 (Fla. 3d DCA 1970)). The Totale court explained that DuPuis "instructs how to apply the 'flexibility theory' to do justice in a particular case."  In Totale, the determination of damages was made after evidence was presented at trial – not on a motion for summary judgment. See Gregg v. U.S. Industries, Inc., 887 F.2d 1462, 1466 (11th Cir. 1989) (applying Florida law) (explaining that "Florida follows the 'flexibility theory' in fraud actions, which permits a trial court to instruct the jury under either the out-of-pocket rule or the benefit of the bargain rule, which will more fully compensate the defrauded party") (citing Martha A. Gottfried, Inc. v. Amster, 511 So. 2d 595, 599 (Fla. 4th DCA 1987)).

Although the defendant contends that "if there had been no alleged misrepresentation, there would have been no UBS Sales Agreement," the issue presents a question for the jury and the defendant is not entitled to a summary judgment precluding the plaintiff from establishing lost profits at trial.

For the reasons discussed above, the defendant's Motion for Summary Judgment (DE# 66, 7/3/13) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida this **4th** day of November, 2013.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to: All counsel of record